IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

DARRELL R. CULLINS,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant

No. C09-0093

RULING ON JUDICIAL REVIEW

_____

**TABLE OF CONTENTS**

I.    *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.    *PROCEDURAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . .  2

III.    *PRINCIPLES OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . .  3

IV.    *FACTS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
    A.    *Cullins' Education and Employment Background.* . . . . . . . . . . .  5
    B.    *Administrative Hearing Testimony.* . . . . . . . . . . . . . . . . .  5
        1.    *Cullins' Testimony.* . . . . . . . . . . . . . . . . . . . .  5
        2.    *Vocational Expert's Testimony.* . . . . . . . . . . . . . . .  7
    C.    *Cullins' Medical History.* . . . . . . . . . . . . . . . . . . . . .  8

V.    *CONCLUSIONS OF LAW.* . . . . . . . . . . . . . . . . . . . . . . . .  11
    A.    *ALJ's Disability Determination.* . . . . . . . . . . . . . . . . .  11
    B.    *Objections Raised By Claimant.* . . . . . . . . . . . . . . . . . .  13
        1.    *Medical Evidence and RFC.* . . . . . . . . . . . . . . . . .  13
        2.    *Credibility Determination.* . . . . . . . . . . . . . . . . .  17
        3.    *Past Relevant Work.* . . . . . . . . . . . . . . . . . . . .  20
    C.    *Reversal or Remand.* . . . . . . . . . . . . . . . . . . . . . . .  20

VI.    *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

VII.    *ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Darrell R. Cullins on July 14, 2009, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Cullins asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Cullins requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On August 9, 2006, Cullins applied for both disability insurance benefits and SSI benefits. In his applications, Cullins alleged an inability to work since June 30, 2006 due to lymphoma, diabetes, and human immunodeficiency virus ("HIV"). Cullins' applications were denied on September 14, 2006. On December 8, 2006, Cullins' applications were denied on reconsideration. On January 16, 2007, Cullins requested an administrative hearing before an Administrative Law Judge ("ALJ"). On August 28, 2008, Cullins appeared via video conference with his attorney before ALJ Debra Bice for an administrative hearing. Cullins and vocational expert Julie A. Svec testified at the hearing. In a decision dated November 4, 2008, the ALJ denied Cullins' claims. The ALJ determined that Cullins was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing his past relevant work as a youth counselor.[1] Cullins appealed the ALJ's decision. On May 11, 2009, the Appeals Council denied Cullins' request for review. Consequently, the ALJ's November 4, 2008 decision was adopted as the Commissioner's final decision.

---

[1] Interestingly, the ALJ noted that Cullins retained skills that would transfer to light, semi-skilled jobs and unskilled job, including gate guard, host, order filler, ticket taker, parking lot attendant, and lab sample carrier, but made no finding that Cullins was functionally capable of performing other work that exists in significant numbers in the national economy. *See* Administrative Record at 25.

On July 14, 2009, Cullins filed this action for judicial review. The Commissioner filed an Answer on October 23, 2009. On January 11, 2010, Cullins filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform his past relevant work as a youth counselor. On February 23, 2010, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On January 6, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision 'if the ALJ's findings are supported by substantial evidence on the record as a whole[.]'" *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)); *see also Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'Substantial evidence is less than a preponderance, but enough that

a reasonable mind might accept as adequate to support a conclusion.' *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Wagner*, 499 F.3d at 848 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Moore*, 572 F.3d at 522 ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005)."); *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) ("As long as

4

substantial evidence in the record supports the Commissioner's decision, we may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.").

## IV. FACTS

### A. Cullins' Education and Employment Background

Cullins was born in 1969. He is a high school graduate. He also completed one year of college. At the hearing, Cullins testified that he quit college to help his mother take care of his nephews.

The record contains a detailed earnings report for Cullins. The report covers Cullins' employment history from 1985 to 2007. He had no earnings in 1985 and 1993. Cullins had a range of earnings from 1986 to 2006, with a low of $463.00 (1989) and a high of $31,706.73 (2002). Cullins had no earnings in 2007.

### B. Administrative Hearing Testimony

#### 1. Cullins' Testimony

At the administrative hearing, Cullins explained that he could no longer work because of pain in his feet caused by diabetic neuropathy. Cullins described the pain in his feet as a throbbing pain with needle-prick type pain. Cullins stated that "[i]f you touch my feet, it hurts real bad so some days I can't even put shoes on."[2] The ALJ asked Cullins whether anything made his foot pain worse. Cullins responded that standing or sitting for extended periods aggravated the pain in his feet. Cullins testified that he is most comfortable while lying down with his feet straight. When asked by the ALJ how often he lays down during a typical day, Cullins responded that "[t]he majority of the day I'm usually laying down unless I have to like go to the bathroom or something like that. Because of the medicine I take for my neuropathy and for the pain in my hands it kind of

---

[2] *See* Administrative Record at 32.

keeps me asleep."[3] Cullins also stated that he has pain similar to his feet in his hands and wrists. According to Cullins, the pain in his hands, makes writing and filling out forms difficult and time consuming.

Next, the ALJ asked Cullins whether he had difficulty walking. Cullins replied that walking was difficult due to pain in his groin. Specifically, Cullins testified that:

> Q: Okay. Do you have any problems with walking?
> A: Yes.
> Q: What --
> A: Especially if I have like some day I may have just the pain on the right side of my groin area in the crease of [my] legs. And then some days I have it[,] it's on both sides. And when I have it when it's on both side[s], I really can't do anything. I could barely get up and go to the bathroom.
> Q: And how often do you have it on both sides?
> A: Quite often. Maybe out of a week I would say at least two or three times where it's hurting on both sides.
> Q: And does it last for a long time or just a short time? . . .
>    So would it last for say an hour or is it, you know, four hours, half a day?
> A: It's usually for days.
> Q: Okay.
> A: Even with the medicine. The medicine just kind of like [I] say[,] kind of puts me to sleep so during the time that I'm sleeping it doesn't really bother me.

(Administrative Record at 36.) Cullins also explained that he has swollen lymph nodes all over his body which cause pain under his arms, in his groin area, and in his neck. According to Cullins, he has been dealing with swollen lymph nodes for over one year.

The ALJ also questioned Cullins regarding his daily activities. Specifically, the ALJ asked Cullins what he does while lying down during a typical day. Cullins stated that he reads or watches T.V. Cullins also stated that people sometimes come to check on him,

---

[3] *Id.* at 33.

and sit with him during the day. Cullins indicated that he could fix food to eat, but could not vacuum or generally do laundry without help.

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Julie A. Svec with a hypothetical for an individual who is able to perform:

> sedentary work as defined by the secretary. I'd like you to further assume that this individual cannot perform repetitive grasping or manipulation of small objects such as a button or pen.

(Administrative Record at 51.) The vocational expert testified that under such limitations, Cullins could not perform his past relevant work. The ALJ provided a second hypothetical which was identical to the first hypothetical except that the individual was capable of performing "light work as defined by the secretary." The vocational expert testified that under such limitations, Cullins could not perform his past relevant work. The vocational expert concluded, however, that Cullins could perform the following work: (1) gate guard (1,000 positions in Iowa and 290,000 positions in the nation), (2) host (1,000 positions in Iowa and 25,000 positions in the nation), (3) order filler (2,000 positions in Iowa and 400,000 positions in the nation), (4) ticket taker (600 positions in Iowa and 15,000 positions in the nation), (5) parking lot attendant (350 positions in Iowa and 18,000 positions in the nation), and (6) lab sample carrier (800 positions in Iowa and 300,000 positions in the nation). Next, the ALJ changed her hypothetical to include a limitation that the individual would miss two or three days of work each week. The vocational expert testified that under such limitations, there would be no jobs that Cullins could perform on a competitive basis. Lastly, the ALJ returned to her original hypothetical and asked the vocational expert "[i]f the Claimant could frequently use their hands for manipulation of small items such as a button or a pen, would that change your answer in any way?" The vocational expert responded that under such a hypothetical, Cullins would be able to perform his past relevant work as a youth counselor.

Cullins' attorney also questioned the vocational expert as follows:

Q: Could any substantial gainful activity be performed if the Claimant needed to lie down at least four hours out of eight?

A: No.

Q: If the hypothetical person had to work at a slow pace, meaning they would not be productive for a third of the work day, would they be employable?

A: No.

Q: If the hypothetical person needed to take excessive number of breaks more then [sic] those allowed, -- two, three, four at a time per day, excuse me, half an hour at a time -- would they be employable?

A: No.

(Administrative Record at 54.)

### C. Cullins' Medical History

In August 2006, Cullins began seeing Dr. Daniel McGrail, M.D., his primary treating physician. At his initial examination, Dr. McGrail outlined Cullins' medical history. Dr. McGrail noted that Cullins was diagnosed HIV positive in 1996. Dr. McGrail also pointed out that earlier in 2006, Cullins was seen at several emergency rooms complaining of chest pain, and was determined to have submandibular and cervical lymphadenopathy. Lastly, Dr. McGrail noted that over the past year, Cullins developed decreased sensation and pins and needles type feeling over the soles of his feet, and extending into his legs. Dr. McGrail diagnosed Cullins with HIV, submandibular and cervical lymphadenopathy (etiology unclear), diabetes mellitus, probable peripheral neuropathy, and history of substance abuse (cocaine).

On September 13, 2006, Dr. Chrystalla Daly, D.O., reviewed Cullins' medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Cullins. Dr. Daly determined that Cullins could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at total of about six hours in an

eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Daly further determined that Cullins could frequently balance, stoop, kneel, crouch, and crawl, but only occasionally climb ladders, ropes, or scaffolds. Dr. Daly also found that Cullins should avoid concentrated exposure to extreme cold and hazards such as machinery and heights. Lastly, Dr. Daly found no manipulative, visual, or communicative limitations.

On November 13, 2006, Cullins was referred to Dr. Keith Wright, M.D., for evaluation of lymphadenopathy. Dr. Wright reviewed Cullins' medical history and noted that Cullins: (1) was HIV positive; (2) had been treated with anti-viral medications for ten years and his HIV status was under reasonable control; (3) had a four-year history of diabetes which has been reasonably controlled by medication; (4) had a seven-to-eight-month history of pain in his feet related to diabetic neuropathy; (5) had a history of hypertension; and (6) recently developed discomfort with enlarged lymph nodes in his axillary (armpit) and inguinal (groin) area. With regard to lymphadenopathy, Dr. Wright opined that:

> Although [Cullins] has some very mild lymphadenopathy, it certainly is not particularly worrisome, and I would not consider it bulky or pathologic. He does have tenderness in the inguinal and axillary areas but it doesn't seem to be associated with lymphadenopathy. It would certainly be unusual for lymphomas to present with tender lymphadenopathy in addition. This then raises the question of whether this could be related to some type of inflammatory musculoskeletal process, an unusual infection given his HIV positivity, or possibly metastatic cancer.

(Administrative Record at 408.) Dr. Wright scheduled further tests for Cullins. On November 29, 2006, Cullins met with Dr. Wright for a follow-up appointment to discuss his test results. Dr. Wright diagnosed Cullins with "very small, diffuse lymphadenopathy." Dr. Wright explained that:

> The etiology of [the lymphadenopathy] is unclear. I think it might well be consistent with his underlying HIV. I don't

9

think at the present time that it is suspicious enough that one would be concerned about possible non-Hodgkin's lymphoma. Given his HIV, however, this always is a concern and consequently will require continued regular medical follow up.

(Administrative Record at 403.) Dr. Wright also opined that:

I suspect that his inguinal tenderness and his axillary tenderness is related to myositis rather than to adenopathy. The etiology of his myositis is unclear. One wonders whether this might be a complication of his medications. I suppose the other possibility is that this is a part of his HIV syndrome, although I think that is less likely.

(Administrative Record at 403.)

In June 2007, Dr. McGrail provided Cullins with a letter explaining his current health condition. The letter stated:

Mr. Darrell Cullins suffers from a myositis, a muscle inflammation, which makes physical exertion quite painful. This situation is being investigated at present, both for diagnosis and for treatment. This does make it very difficult, if not impossible, for him to work at any jobs where he has to do any physical labor.

(Administrative Record at 396.)

On June 15, 2007, Cullins met with Dr. Erich W. Streib, M.D., complaining of muscle pain, nerve pain, and muscle weakness. Specifically, Cullins indicated that he had aching pain in his thigh muscles, hamstring muscles, back muscles, and arm muscles. After examining Cullins, Dr. Streib concluded that there was evidence of polyneuropathy, consistent with diabetic polyneuropathy. Dr. Streib found no evidence of myositis or other neuromuscular disease.

In July 2007, Cullins was evaluated by Dr. Steven Eyanson, M.D., for possible myositis. Dr. Eyanson noted that:

[Cullins] relates that for about the last year he has had diffuse pain in the arms and legs as well as under the arms. This is associated tenderness to touch, goes and comes, and has been treated as an adenopathy. . . . An EMG recently done showed

10

> a peripheral neuropathy not inconsistent with diabetes mellitus
> but no signs of insertional activity.

(Administrative Record at 416.) Upon examination, Dr. Eyanson diagnosed Cullins with peripheral neuropathy, diffuse adenopathy, hypertension, and diabetes. Dr. Eyanson noted that Cullins' elevated CPK "seem[ed] to be improving." Dr. Eyanson opined that Cullins' symptoms were likely the result of medication-related process or association with peripheral neuropathy. Dr. Eyanson also opined that "I think these CPK effects are not unreasonable to see with a patient with peripheral neuropathy, and especially one that has been on medications for his underlying problems."[4]

On May 13, 2008, Dr. McGrail provided the Iowa Department of Human Services with a "Report on Incapacity." In the report, Dr. McGrail diagnosed Cullins with HIV, diabetes, and myositis. Dr. McGrail found that Cullins' condition was progressive and Cullins could not return to his usual employment. Dr. McGrail recommended that Cullins apply for long-term disability benefits.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Cullins is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the

---

[4] *See* Administrative Record at 398.

impairment necessarily prevents the claimant from doing any
other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at
590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet
the criteria at any step in the evaluation of disability, the process ends and the claimant is
determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)
(citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to
show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v.
Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815
(8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the
Commissioner to demonstrate that the claimant retains the residual functional capacity
("RFC") to perform a significant number of other jobs in the national economy that are
consistent with claimant's impairments and vocational factors such as age, education, and
work experience. *Id.* The RFC is the most an individual can do despite the combined
effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is
'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant
evidence, including medical records, observations of treating physicians and others, and
[the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting
*Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Cullins had not
engaged in substantial gainful activity since June 30, 2006. At the second step, the ALJ
concluded from the medical evidence that Cullins had the following severe combination
of impairments: HIV, Type 2 insulin-dependent diabetes mellitus with peripheral
neuropathy, obesity, carpal tunnel syndrome, diffuse lymphadenopathy, and a history of
cocaine dependence and abuse. At the third step, the ALJ found that Cullins did not have
an impairment or combination of impairments listed in "20 C.F.R. [§] 404, [Appendix 1,

Subpart P, Regulations No. 4 (the Listing of Impairments)]." At the fourth step, the ALJ determined Cullins' RFC as follows:

> [Cullins] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) requiring no more than frequent grasping or manipulation of small items such as a button or pen.

(Administrative Record at 19.) Also at the fourth step, the ALJ determined that Cullins could perform his past relevant work as a youth counselor. Therefore, the ALJ concluded that Cullins was not disabled.

### B. Objections Raised By Claimant

Cullins argues that the ALJ erred in four respects. First, Cullins argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly consider important objective medical evidence regarding his physical health. Second, Cullins argues that the ALJ failed to fully and fairly develop the record with regard to work-related limitations associated with his medical condition. Third, Cullins argues that the ALJ failed to properly consider his subjective complaints of pain and disability. Lastly, Cullins argues that the ALJ erred in finding that he could return to his past relevant work as a youth counselor.

### 1. Medical Evidence and RFC[5]

Cullins argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly consider objective medical evidence of consistently elevated CK numbers.[6] Specifically, Cullins points out that the ALJ, in her decision,

---

[5] Cullins' first and second arguments are closely related. Therefore, the Court will consider both arguments together.

[6] Creatine kinase ("CK") is an enzyme found in various tissue and cell types. CK catalyzes the conversion of creatine and consumes adenosine triphosphate ("ATP") to create phosphocreatine and adenosine diphosphate. In tissues and cells that consume ATP rapidly, such as skeletal muscle, phosphocreatine serves as an energy reservoir for the rapid buffering and regeneration of ATP. Elevated CK is an indication of muscle damage.

(continued...)

focused solely on the medical evidence which suggested that his CK levels were improving, and failed to consider the evidence which suggested his CK levels were not improving.[7] Cullins also argues that the ALJ's RFC assessment is faulty because there are multiple undeveloped issues in the case. Specifically, Cullins argues that:

> First and foremost is the significance of the CK testing. The ALJ gave virtually no weight [to] the CK test results. As previously argued, the CK testing is consistent with Mr. Cullins' muscle pain and fatigue and strong objective evidence of the claimant's disability. A crucial unresolved issue is the effect of the claimant's elevated CK on the claimant's condition and work-related limitations. . . .
> Another unresolved issue is whether the claimant has myositis. The ALJ found the diagnosis of myositis was ruled out in June and July 2007 based on nerve conduction studies and rheumatological evaluation. Later, though, Dr. McGrail and Dr. Wright continued to indicate the claimant had myositis.

*See* Cullins' Brief (docket number 15) at 16. Cullins concludes that remand is necessary to allow the ALJ to consider all of the relevant evidence and further the develop the record by recontacting his treating physicians regarding his elevated CK levels and diagnosis of myositis.

---

[6](...continued)

*See* http://en.wikipedia.org/wiki/Creatine_kinase; *see also Gonzalez v. Barnhart*, 491 F. Supp.2d 329, 333 n. 6 (W.D.N.Y. 2007) ("A CK test is a blood test that measures creatine phosphokinase ("CPK"), an enzyme found predominantly in the heart, brain and skeletal muscle. When the CPK is substantially elevated, it usually indicates injury or stress to one or more of these areas. The test is used to determine the extent of muscle damage caused by drugs, trauma or immobility.").

[7] In July 2007, Dr. McGrail noted that in April 2007, Cullins' CK level was 909. It increased to 1500 in May, but lowered to 384 in June. *See* Administrative Record at 456. In July Cullins' CK level was 627. *Id.* at 459. In September, Cullins' CK level rose to 986. *Id.* at 451. Cullins' CK level lowered to 373 in November. *Id.* at 446. By March 2008, however, Cullins' CK level was 1194. *Id.* at 423.

An ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184(S.S.A.).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)).

Additionally, it is appropriate for an ALJ to "seek additional clarifying statements from a treating physician" when a crucial issue is undeveloped. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citation omitted). An ALJ should only contact a treating physician "if the doctor's records are 'inadequate for us to determine whether the claimant is disabled' such as 'when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'" *Goff*, 421 F.3d at 791 (citing 20 C.F.R. §§ 404.1512(e) and 416.912(e)). An ALJ may also order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see*

15

*also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). Additionally, 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

The ALJ's decision provides a lengthy and thorough discussion of some of the relevant medical evidence in this case. The ALJ's decision, however, lacks consideration of all of the relevant medical evidence. In particular, the ALJ failed to address the medical evidence which detracts from or is inconsistent with her conclusions. *See Wagner*, 499 F.3d at 848 (reviewing courts not only consider the evidence which supports an ALJ's decision, but also the evidence that detracts from his or her decision). Specifically, the ALJ dismissed Cullins' elevated CK levels because "[a]lthough CPK levels remained elevated, levels were improving[.]"[8] While it is true that Cullins' CK levels lowered in June 2007, the levels began to rise in July and continued to rise in September.[9] In March 2008, Cullins' CK level was elevated almost four times from the level recorded in June 2007.[10] Similarly, the ALJ determined that Cullins' myositis was ruled out in June and July 2007, but a "Report on Incapacity" filled out by Dr. McGrail, Cullins' primary treating physician, in March 2008, recommended that Cullins seek long-term disability due

---

[8] *See* Administrative Record at 22.

[9] *Id.* at 451, 456, 459.

[10] *Id.* at 423.

to among other things, myositis.[11] Having reviewed the entire record, the Court finds that the ALJ failed to fully and fairly develop the record with regard to Cullins' CK levels and myositis. *See Cox*, 495 F.3d at 618. Moreover, because elevated CK levels and myositis suggest muscle pain and weakness, the Court believes that the ALJ's RFC finding was not based on all of the relevant evidence. *See Guilliams*, 393 F.3d at 803. Accordingly, the Court concludes that this matter should be remanded for further consideration of the medical evidence as it pertains to Cullins' CK levels and myositis.

On remand, the ALJ must explain her reasons for accepting or rejecting the medical evidence as it relates to Cullins' elevated CK levels and myositis. The ALJ must also discuss Cullins' elevated CK levels and myositis as they relate to his RFC, and make a new RFC assessment. Only then will the Court be able to determine "whether the ALJ's decision is supported by substantial evidence on the record as a whole." *Vester*, 416 F.3d at 889. Additionally, if the ALJ finds that the issues of Cullins' elevated CK levels and myositis are undeveloped, she should seek clarification on such issues from Cullins' treating physician, Dr. McGrail. *See Stormo*, 377 F.3d at 806. The ALJ may also order a consultative examination if additional evidence is needed for making a final determination on whether Cullins is disabled. *See Barrett*, 38 F.3d at 1023; 20 C.F.R. § 404.1519a(b)(1).

### 2. *Credibility Determination*

Cullins argues that the ALJ failed to properly evaluate his subjective allegations of disability. Cullins maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Cullins' testimony and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians

---

[11] *See* Administrative Record at 401.

relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski*, 739 F.2d at 1322. The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see*

*also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In her decision, the ALJ properly set forth the law for making credibility determinations under *Polaski* and the Social Security Regulations.[12] The ALJ concluded that Cullins' "severity of pain complaint and degree of limitation asserted has not been supported by the treatment history or objective diagnostic findings."[13] While the ALJ's decision provides some examples of inconsistencies between Cullins' subjective allegations of pain and disability and the medical evidence in the record, the ALJ provides no discussion of the *Polaski* factors. Moreover, in section *V.B.1* of this Ruling, the Court concluded that the ALJ failed to properly consider all of the relevant medical evidence in rendering her decision. Thus, the Court questions whether the ALJ's conclusion that "severity of pain complaint and degree of limitation asserted has not been supported by the treatment history or objective diagnostic findings" supports her credibility determination for Cullins. Therefore, because the ALJ's decision lacks full consideration of all of the *Polaski* factors and full consideration of all of the relevant medical evidence, the Court determines that remand is appropriate for the ALJ to further develop the record with regard to Cullins' credibility. On remand, the ALJ shall set forth in detail her reasons for finding Cullins' subjective allegations to be credible or not credible. If on remand, the ALJ finds Cullins' testimony not to be credible, the ALJ shall fully explain the reasons for

---

[12] *See* Administrative Record at 22-24.

[13] *Id*. at 24.

her credibility determination and fully explain the inconsistencies between Cullins' subjective allegations and the evidence in the record.

### 3. *Past Relevant Work*

Cullins argues that the ALJ erred in finding that he could return to his past relevant work as a youth counselor. Without determining whether the ALJ erred in her finding, the Court concludes that based on the determination in section *V.B.1* of this Ruling, that on remand, the ALJ must make a new RFC assessment, the ALJ must also make new determinations at steps four and five of the five-step sequential test as to whether Cullins is capable of performing his past relevant work or other work that exists in the national economy. *See Beckley*, 152 F.3d at 1059 (explaining the determinations necessary at steps four and five of the five-step sequential test).

### C. *Reversal or Remand*

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records

as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to pertinent medical evidence and its relation to Cullins' RFC. The ALJ also failed to provide a proper credibility determination for Cullins. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ shall fully and fairly develop the record with regard to the medical evidence as it pertains to Cullins' CK levels and myositis. Specifically, the ALJ must explain her reasons for accepting or rejecting the medical evidence as it relates to Cullins' elevated CK levels and myositis. The ALJ must also discuss Cullins' elevated CK levels and myositis as they relate to his RFC, and make a new RFC assessment. The ALJ is further instructed to make a proper credibility determination in accordance with the requirements set forth in *Polaski*. Lastly, in light of the foregoing, the ALJ shall also make new determinations at steps four and five of the five-step sequential test.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 18th day of May, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA